IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NANCY DINOTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CARL C. DANBERG, REBECCA MCBRIDE, | ) |
| and G.R. JOHNSON, | ) |
| | ) |
| Defendants. | ) |

Civil Action No.  12-cv-377 (GMS)

## MEMORANDUM OPINION

## I.   INTRODUCTION

The plaintiff, Nancy Dinote ("Dinote"), filed a Complaint (D.I. 1) against the defendants, Carl C. Danberg, Commissioner of the Department of Correction, Rebecca McBride, Director of Central Offender Records, G.R. Johnson, Warden of Sussex Correctional Institute, Michael Deloy, and Patrick Ryan, Warden at Delores J. Baylor Women's Correctional Institute (collectively, the "defendants") on March 26, 2012.[1]  In her Complaint, Dinote seeks compensatory damages, as well as cost of suit and attorney's fees in connection with the defendants' alleged violation of her civil rights pursuant to 42 U.S.C. § 1983, 11 Del. C. §§ 2104, 2105, and the Fourth, Fifth, Eighth, and Fourteenth Amendments. (*Id.* at ¶¶ 48, 51.) Dinote asserts each claim against the defendants in their individual capacities. (*Id.* at ¶ 6.)

Presently, there are two remaining claims for relief under 42 U.S.C. § 1983.[2]  First, Dinote asserts that transporting female inmates, released by judicial order processed through Delaware's

---

[1] Dinote dismissed Patrick Ryan and Michael Deloy from this action on December 17, 2012 and April 9, 2013, respectively. (D.I. 26; D.I. 38.)

[2] Dinote concedes in her Answering Brief in Opposition to the defendants' Motion for Summary Judgment, that she is not pursuing her ADA Title II claims and State law claims asserted in the Complaint. (D.I. 38 at 14.) In addition, it appears from the parties' Final Pretrial Order and Dinote's Trial Brief included therein, that Dinote is not

Central Offender Records ("COR"), from the Sussex Correctional Institution ("SCI") to the Baylor Women's Correctional Institution ("BWCI"), violates the Equal Protection Clause of the Fourteenth Amendment. (*Id.* at 14.) Second, Dinote argues that the second strip search to which she was subjected upon arrival at BWCI and after the COR received her release order, violated her Fourth Amendment rights. (D.I. 38 at 18.) On March 4, 2013, following the completion of discovery, the defendants filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). (D.I. 34.) In response, Dinote filed an Answering Brief opposing the motion on April 9, 2013 (D.I. 38) and, on April 16, 2013, the defendants filed a Reply (D.I. 40). Presently before the court is the defendants' Motion for Summary Judgment. For the reasons stated below, the court will grant the defendants' motion.

## II. BACKGROUND

The facts underlying the instant action are not in dispute. On May 9, 2010, Dinote and her husband were arrested on charges stemming from a domestic dispute and were taken to Delaware State Police Troop 7. (D.I. 1 at ¶ 7; D.I. 35 at 3.) There, Dinote's husband was video arraigned and released to his son, Steven, on the condition that he reside with his son in Virginia. (D.I. 35 at 3.) Justice of the Peace William Boddy informed Steven that Dinote would not be released due to her intoxication level.[3] (D.I. 35-1 at 18.) Judge Boddy committed Dinote to the custody of the Department of Corrections in default of $500 cash bail and scheduled a video arraignment for Monday, May 10, 2010 at 1:30 p.m. (*Id.*)

---

federal, actors, her Fifth Amendment claim fails. Moreover, the parties do not dispute that Dinote was a pretrial detainee during the time period alleged in the Complaint. Thus, because the Eighth Amendment does not apply to pretrial detainees, any claims alleged under this Amendment would likewise fail. *See Bell v. Wolfish*, 441 U.S. 520, 523 (1979).

[3] State Troopers administered a portable breath test to both Dinote and her husband. (D.I. 35 at 3.) The test results were .136% Blood Alcohol Content for Dinote and .065% for her husband. (D.I. 35-1 at 16–17.) Dinote disagrees with the assertion that she was intoxicated. (D.I. 1 at ¶ 9.)

Dinote was then transported to SCI, arriving at 12:59 a.m. on May 10, 2010. (D.I. 1 at ¶¶ 10–12.) Dinote was strip searched upon arrival at SCI and assessed by a nurse. (*Id.* at ¶¶ 11–12.) Dinote was later video arraigned on May 10, 2010 at 1:45 p.m. by Justice of the Peace Adams. (D.I. 35 at 4.) Judge Adams reduced Dinote's bail to $250 unsecured with a no contact order. (*Id.*) At 2:24 p.m. that day the Justice of the Peace Court executed a judicial order for Dinote's release. (*Id.*) COR, the Delaware entity responsible for the final processing of inmate releases statewide, received Dinote's release order at 3:23 p.m.[4] (*Id.*)

Dinote, in the company of four other female offenders, was transported from SCI to BWCI on May 10, 2010 at 7:45 p.m, as SCI had not received her release order from COR by that time and SCI does not house women inmates for over twenty-four hours.[5] (*Id.*) Dinote had difficulty entering the prison van due to physical disability and sustained minor injuries when she fell trying to enter it without assistance. (D.I. 1 at ¶ 34.) At BWCI booking and receiving, Dinote was again strip-searched and was required to bathe without soap in a shower in which another inmate had vomited and defecated. (*Id.* at ¶ 36.) COR completed the processing of Dinote's release order and she was ultimately released at approximately 12:50 p.m. on May 11, 2010 after BWCI received the release order. (D.I. 35-1 at 5.)

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[4] As the parties' submissions explain, in Delaware, a release order is sent to COR and an inmate cannot be released until COR processes it and sends the release to the housing institution. (D.I. 38 at 6.) COR is open Monday through Friday 5:00 a.m. to 10:00 p.m. and Saturday and Sunday 6:00 a.m. to 10:00 p.m. (D.I. 39 at A-3.) COR receives approximately 150 releases each day. (D.I. 39-2 at 27.)

[5] SCI is a male-only facility and the policy of the institution is to house females for at most twenty-four hours. (D.I. 1 at ¶ 24.) As a result, Dinote was required to travel to the only female facility in the State, BWCI, when COR did not send her release to SCI within that twenty-four hour time limit. (*Id.*)

3

party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A fact is material if it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). There is a genuine issue "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* When determining whether a genuine issue of material fact exists, the district court must view the evidence in a light most favorable to the nonmoving party and draw inferences in that party's favor. *See Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citing FED. R. CIV. P. 56(e)).

Importantly, the mere existence of some evidence in support of the nonmoving party will not prove sufficient for denial of a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* Specifically, the party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Thus, a nonmoving party asserting that a material fact is in dispute must support this assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute. . . ." *See* FED. R. CIV. P. 56(c)(1). If the nonmoving party fails to make a sufficient

4

showing on an essential element of its case for which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 32.

## IV.   DISCUSSION

As noted, Dinote asserts two causes of action. Dinote alleges that the institutional policy in place requiring COR to process release orders, during which time women may be transferred to BWCI, has a discriminatory impact on women and violates the Equal Protection Clause of the Fourteenth Amendment. (D.I. 1 at ¶¶ 45–48.) In addition, Dinote alleges that her Fourth Amendment rights were violated when she was strip searched at BWCI, after she was already ordered released. *(Id.* at ¶¶ 49–51.) Dinote brings each claim under 42 U.S.C. § 1983.[6]

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law by state officials. *See* 42 U.S.C. § 1983. Section 1983, however, is not an independent source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

### A.   Dinote's Fourteenth Amendment Claim

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Clause's protections apply to administrative as well as legislative acts. *See, e.g.*, *Raymond v. Chicago Union Traction Co.*, 207 U.S. 20, 35-36 (1907). To assert an Equal Protection claim, a plaintiff must demonstrate, as a threshold showing, that they were treated

---

[6]*See supra* note 2.

differently than others similarly situated. *Plyer v. Doe*, 457 U.S. 202, 216 (1982) (citation omitted) ("Dissimilar treatment of dissimilarly situated persons does not violate equal protection."). The "similarly situated" inquiry focuses on whether a plaintiff is similarly situated to another group for purposes of the challenged government action. *See Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) (citing *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993)). Whether female inmates are similarly situated to male inmates requires an inquiry focusing on the purpose or purposes of the challenged government action. *See Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996). Moreover, courts have consistently held that sex-based classifications in the context of prison conditions are given at least intermediate scrutiny, requiring that the classification be "substantially related to an important governmental objective." *See, e.g.*, *West v. Virginia Dep't of Corr.*, 847 F. Supp. 402, 405 (W.D. Va. 1994); *Pitts v. Thornburgh*, 866 F.2d 1450, 1452 (D.C. Cir. 1989) (rejecting the "reasonably related to legitimate state interest" standard and concluding "that the heightened scrutiny traditionally applied in cases alleging gender discrimination is appropriate").

Dinote alleges that SCI's policy requiring female inmates to be transferred to BWCI within twenty-four hours, regardless of their release status, is arbitrary and unnecessary. (D.I. 38 at 16.) Dinote cites to previous policies in place at SCI allowing women to avoid transfer to BWCI, assuming that SCI was aware of a signed judicial release order, as proof that a more efficient and less discriminatory policy exists. (*Id.*) Dinote argues that since the implementation of COR, women have been treated differently than their male counterparts and that, as a result, she was held longer than a male inmate. (*Id.*) Dinote contends that because Danberg and Johnson knowingly oversaw and controlled the policies and regulations that established these procedures and McBride

6

knew that the COR was not open on evenings and weekends, resulting in a significant backlog in releases, each may be individually liable for this constitutional violation under § 1983.

Dinote, however, has failed to establish this cause of action. Dinote has not demonstrated that the named defendants violated the Equal Protection Clause by requiring male and female inmates to be housed separately. In fact, it is well-established that the segregation of inmates by sex is constitutional. *See Pitts*, 866 F.2d 1450. Thus, the transferring of Dinote to the all-female facility, BWCI, from the co-ed SCI, does not, in and of itself, establish a Fourteenth Amendment violation. Moreover, assuming that Dinote has sufficiently demonstrated that the male and female inmates in question are similarly situated, Dinote fails to effectively challenge the defendants' contention that SCI's policies are substantially related to an important governmental interest. Specifically, the defendants assert that the policy of transporting female inmates to BWCI is necessary because SCI is a male facility ill-equipped to provide long-term accommodations for females, regardless of release status. In addition, the policy of utilizing SCI as an intermediary facility for males and females enhances law enforcement efficiency by allowing agents to quickly return to their duties rather than being required to transport all female arrestees to BWCI. (D.I. 39-1 at 1.) While Dinote asserts that Danberg could request funds to "expand the receiving room and put more cells in SCI" to "keep women who are in pre-trial until they went to trial or were released" and has not done so, she has not meaningfully challenged that a department of corrections can house male and female inmates separately. Dinote also has not demonstrated that the lack of additional holding space for judicially released women, alone, results in disparate treatment and an Equal Protection violation.

Specifically, the court also disagrees with Dinote's contention that centralization of release orders at the COR coupled with SCI's policy of transferring women inmates to BWCI after twenty-

7

four hours, results in or amounts to an Equal Protection violation. First, the court finds that the establishment and ongoing operation of COR does not inherently discriminate against women. Dinote alleges that Danberg, in his individual capacity, violated her Fourteenth Amendment rights by overseeing the organizational shift from the pre-2008 institution-independent records system to the more centralized COR system used by Delaware Corrections. (D.I. 38 at 17.) This argument is unpersuasive. Unlike the Equal Protection violation cases often brought by female inmates in the prison context, the establishment and operation of COR does not discriminate based on gender in practice or intent. *See, e.g., Barney v. Pulsipher*, 143 F.3d 1299, 1312 at n.15 ("The Equal Protection Clause in the prison-context is usually invoked to remedy disparities in educational, vocational and recreational programs offered to male and female inmates.") (citing *Women Prisoners v. District of Columbia*, 93 F.3d 910, 924–27 (D.C. Cir. 1996); *Klinger v. Dept. of Corr.*, 31 F.3d 727 (8th Cir. 1994)). Rather, COR provides a centralized records system for the processing of all offenders regardless of gender.

Second, the court also disagrees with Dinote's contention that the creation of COR and SCI's twenty-four hour transfer policy combine to result in an Equal Protection Clause violation because, if COR were not established, she would not have been transported to BWCI pending release and would have been released sooner. (D.I. 38 at 16.) Indeed, it is clear from the record that COR does not distinguish between men and women in its processing of records and releases and did not do so in this case.[7] COR received Dinote's judicial release order on May 10, 2010 at 3:23 p.m. The office, which receives approximately 150 release orders a day, is closed from 10:00 p.m. until 5:00 a.m. Dinote was physically released from BWCI on May 11, 2010 at 12:50 p.m.,

---

[7] Dinote suggests that COR has the capacity to expedite release orders for women and should do so to prevent women from being transferred to BWCI, reinforcing the fact that COR does not currently make a gender distinction in release order processing. (D.I. 38 at 16-17.) Further, the decision to transfer female inmates, pending release, is not attributable to the creation of the COR.

twenty-two hours after her release was received by COR and during which time COR was open for approximately fourteen hours. There is no evidence in the record that COR processed male and female judicial release orders differently or delayed its processing of Dinote's release.[8] Indeed, the timeline underscores the fact that had Dinote been a male inmate at SCI she would likely have been released at the same time.[9] Thus, as there is no evidence that the processing of Dinote's release was treated any differently than that of a male inmate, the court finds that Dinote has not established that the COR system and/or SCI's twenty-four housing period for female inmates, results in an Equal Protection violation.

### B. Dinote's Fourth Amendment Claim

In § 1983 suits, a plaintiff must plead that each government official defendant, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[E]ach Government official his or her title notwithstanding, is only liable for his or her own misconduct."). Furthermore, "in a § 1983 suit—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer." *Id.* at 677. Absent vicarious liability, each government official, his or her title notwithstanding, is only liable for his or her own misconduct. *Id.* To this end, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citation omitted).

---

[8] *See supra* note 7.

[9] The court notes that because Dinote has failed to establish that a male inmate would have been released sooner, her argument centers instead on the assertion that she suffered an Equal Protection injury by being transferred from SCI and BWCI. The court finds the argument that this injury rises to a Fourteenth Amendment violation to be equally unpersuasive.

Here, there is no evidence that defendants Danberg, McBridge, or Johnson, in their roles as Commissioner of the Delaware Department of Corrections, Director of Central Offender Records, and Warden of SCI, respectively, had any contact or interaction with Dinote during the time in question or that they made the decision that she be strip searched. Dinote also does not allege that the strip search policy at BWCI was established and/or approved by any of the individual defendants. Specifically, Dinote's brief contains a citation to Danberg's testimony that it is the warden who would establish the strip search policy for that institution. Thus, while Dinote's account of her prison experience may, if proved, demonstrate a constitutional violation,[10] her allegations and pleadings, as well as the evidence she presents, is insufficient to legally implicate the individual defendants presently before the court as the warden of BWCI is not a party to this action. Instead, Dinote attempts to make out a claim against these defendants by associating institutional policies, such as the requirement that all incoming inmates at BWCI go through the "standard booking procedure" including a strip search and a shower, with constitutional violations. (D.I. 38 at 5.) These claims are based solely on defendants' various positions within the Delaware Department of Correction, rather than any alleged individual involvement in the alleged events. (D.I. 35-1 at 6–12.) Thus, defendants are entitled to summary judgment on Dinote's Fourth Amendment claims.

## V. CONCLUSION

---

[10] The court notes that Dinote's ability to demonstrate a Fourth Amendment constitutional violation based on the two strip searches to which she was subjected may be questionable. Indeed, the Supreme Court recently affirmed the Third Circuit's decision in *Florence v. Burlington Cnty.*, 132 S. Ct. 1510 (2012), that prison officials have the discretion to maintain a policy that every arrestee entering a correctional facility be strip searched. *Florence*, 621 F.3d 296, 310-11 (3d Cir. 2010), *affirmed*, 132 S. Ct. 1510 (2012). In fact, the defendant in *Florence* was strip searched upon entering a correctional facility and again when he was moved to a different facility. *See Florence*, 621 F.3d at 299. Thus, while the court makes no prediction as to the viability of Dinote's strip search claim, as her case involved a search after the release order was judicially issued, the Supreme Court's holding in *Florence* would likely prove instructive.

In view of the foregoing, the court concludes that the defendants' Motion for Summary Judgment is granted.[11]

---

[11] In light of this holding, the court finds it unnecessary to address the issue of qualified immunity briefed by the parties. (D.I. 40 at 4.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NANCY DINOTE,<br><br>   Plaintiff,<br><br>  v.<br><br>CARL C. DANBERG, REBECCA MCBRIDE,<br>and G.R. JOHNSON,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.  12-cv-377 (GMS)<br>)<br>)<br>)<br>)<br>) |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

1. The defendant's Motion for Summary Judgment (D.I. 34) is GRANTED; and

2. The Clerk of Court is directed to close this case.

Dated: May 23, 2013

_____
CHIEF, UNITED STATES DISTRICT JUDGE